# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6615 | **DATE** | 10/21/2003 |
| **CASE TITLE** | Walker vs. Mueller Industries, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Defendants' Motion for Summary Judgment [Doc. 17] is granted in its entirety. All other pending motions are moot and terminated. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | OCT 2 2 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 38 |
| ✓ | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | JAR(lc) courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice OCT 2 2 2003 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENNIS J. WALKER ) | |
| ) | No. 02 C 6615 |
| Plaintiff, ) | |
| ) | HONORABLE DAVID H. COAR |
| v. ) | |
| ) | |
| MUELLER INDUSTRIES, Inc., et al., ) | DOCKETED |
| ) | |
| ) | OCT 2 2 2003 |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dennis Walker filed this lawsuit alleging racial discrimination and retaliation for complaining of racial discrimination in violation of Title VII and 42 U.S.C. § 1981. Defendants have now filed for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Their motion has now been fully briefed. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## Factual and Procedural Background

Plaintiff Dennis Walker ("Plaintiff" or "Walker") is a sixty-one year old Caucasian male who works as a warehouse worker for Defendant Mueller Streamline Company at its distribution center in Addison, Illinois. (Def. St. Undisputed Facts ["Def. Facts"], ¶¶1-2; Pl. St. Undisputed Facts ["Pl. Facts"], ¶¶ 1-2)[1] Walker has worked for Mueller Streamline Company since 1993.

Defendant Mueller Streamline Company is a subsidiary of Defendant Mueller Industries,

---

[1] Unless otherwise noted, the Court only draws those facts from the parties' statements of undisputed material facts that are not in dispute. Where there is any significant disagreement, the Court will cite to the source of the facts in the evidence filed in connection with the summary judgment motion.

1

Inc. Unless it is necessary to distinguish between these two entities for any reasons, references to "Mueller" will refer to both of these Defendants. The third Defendant in this action is Deborah Jones ("Jones"). (Def. Facts, ¶3) Defendant Jones has been the manager of the Mueller facility in Addison since October 1999. Since that time, Jones has also been Plaintiff's supervisor.

In the distribution center in Addison, warehouse workers, such as Plaintiff, perform a variety of tasks. The types of duties include tube bay, UPS, inventory or cycle count, auditing, and picking orders. (Pl. Dep. at 61–64) On any given day, warehouse workers at Mueller can be assigned to perform any of the duties listed above. According to Plaintiff, picking orders is the most physically exhausting duty among those in the Addison distribution center. Picking orders is what Plaintiff does "95 percent of the time." (Pl. Dep. at 63)

All of the warehouse workers at Mueller's Addison facility report to Defendant Jones. Jones has the authority to designate an employee as a "lead person" who has some supervisory authority. The parties dispute whether the lead person is truly a supervisor, but they do not dispute that the lead person lacks the authority to discipline, discharge, or hire employees. (Def. Facts, ¶18) In 1995, Plaintiff occupied the lead person position. At that time, he received five cents per hour additional compensation for performing the lead person role. In August 1995, Plaintiff ceased being the lead person and his pay was reduced downward by five cents. Since that time, the collective bargaining agreement has been amended in some respects. Since Jones became manager of the Addison facility, none of the warehouse workers are paid any differently than what is set forth in the union contract. (Pl. App. at Tab B ("Jones Dep.") at 13:24, 14:1–5)

Throughout his tenure at Mueller, Plaintiff would occasionally send letters to Mueller's corporate office; some letters he would sign, others he would submit anonymously. These letters

contained complaints and/or reports about the goings-on at the Addison facility. Mueller would often (though not always) investigate the complaints.

Plaintiff did not complain of workplace discrimination until April 2001. Prior to his complaints, Plaintiff was aware of conduct in the Mueller facility in Addison that he believed constituted racial harassment. The conduct included racially motivated songs, references to African-Americans as "monkeys", and the word "n-i-g-a" scrawled on the walls of the warehouse.

On May 21, 2001, Plaintiff Dennis Walker filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Defendant Mueller Industries discriminated against him on the basis of his race, white, and retaliated against him for making complaints of racial discrimination. (Pl. Comp., Ex. A) On April 26, 2002, the EEOC issued its determination that there was "reasonable cause to believe that Respondent [Mueller Industries] maintains a hostile work environment on the basis of race, Black, in violation of Title VII." (Pl. Comp., Ex. B) On June 20, 2002, the EEOC issued Plaintiff a notice of his right to sue. (Pl. Comp., Ex. C) On September 17, 2002, Plaintiff timely filed his lawsuit in this court. (Pl. Comp.)

Plaintiff's Complaint alleges that Defendants subjected him to a racially hostile work environment; discriminated against him on the basis of his race; and retaliated against him for complaining of racial discrimination. (Pl. Comp., ¶¶ 6–8) Plaintiff seeks relief under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Defendants now move for summary judgment on Plaintiff's Complaint.

## Summary Judgment Standard

Summary judgment should be granted if the pleadings, depositions, answers to

interrogatories, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Mosher v. Dollar Tree Stores, Inc., 240 F.3d 662, 666 (7th Cir. 2001). When evaluating summary judgment motions, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. See Contreras v. Suncast Corp., 237 F.3d 756, 759 (7th Cir. 2001).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff also seeks relief for this alleged discrimination under 42 U.S.C. § 1981. Section 1981 provides a separate method to challenge an employer's alleged intentional discrimination. See Walker v. Abbot Labs, 340 F.3d 471 (7th Cir. 2003). Although there are some procedural differences between Title VII claims and Section 1981 claims (no statute of limitations in Section 1981, not necessary to file EEOC charge in Section 1981), "the same standards governing liability under Title VII apply to § 1981 claims." Bennett v. Roberts, 295 F.3d 687, 697 (7th Cir. 2002) (quoting Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1035 (7th Cir. 1998)).

## I. Hostile Work Environment Claim

Plaintiff alleges that the conditions at Mueller created a hostile work environment that would violate Title VII. Under Title VII an employer is prohibited from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe

4

or pervasive to alter the conditions of the victim's employment and create an abusive work environment...." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations omitted) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)). There are several factors to consider in determining whether a given work environment is sufficiently hostile to violate the statute. See Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463 (7th Cir.2002) (describing factors); Cerros v. Steel Techs., 288 F.3d 1040, 1045-46 (7th Cir.2002)(same). As an initial matter, though, the plaintiff must show that the harassment was based on a characteristic that placed the plaintiff within a protected class. Cerros, 288 F.3d at 1045.

In this case, the plaintiff cannot make that initial showing. The Seventh Circuit has held that plaintiffs who seek to bring a hostile work environment claim must be able to demonstrate that the hostility was based on one of plaintiff's own characteristics. See Bermudez v. TRC Holdings, Inc., 138 F.3d 1176 (7th Cir. 1998). In Bermudez, the Seventh Circuit rejected a claim that persons opposed to discrimination could bring a hostile work environment claim without belonging to the protected class that was subjected to the harassment: "We have never recognized this as a valid theory of discrimination under Title VII." Id. at 1180. Plaintiff's hostile work environment claim could proceed to trial if Plaintiff were African-American, see Mendenhall v. Mueller Streamline Co., No. 01-C-9740, 2003 WL 187405, at *4–*5 (N.D. Ill., Jan. 28, 2003) (denying summary judgment on the hostile work environment claim of an African-American plaintiff who works at the same warehouse as Plaintiff), but because Plaintiff is white, his hostile work environment claim fails in this Circuit. Plaintiff's contentions as to his right to assert a hostile work environment claim is foreclosed by the holding in Bermudez: Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

## II. Race Discrimination Claim

Although the Plaintiff clearly alleged in his EEOC charge and his complaint in this Court that he had been discriminated against on the basis of his race, Plaintiff abandoned his complaint of race discrimination during discovery. At Plaintiff's deposition, the following colloquy took place:

> Q: Do you have any claim in this case of race discrimination?
> A: No.
> Q: Are you claiming in this case at all that you are being discriminated against on the basis of your race?
> A: No.

(Pl. Dep. at 127–28) The undisputed evidence submitted in support of Defendants' Motion for Summary Judgment demonstrates that Defendants are entitled to summary judgment on Plaintiff's race discrimination claim.

## III. RETALIATION CLAIM

Plaintiff's final claim is that Defendants retaliated against him for complaining of racial discrimination at Mueller's Addison facility. The Seventh Circuit announced the legal standard for retaliation claims in Stone v. City of Indianapolis Pub. Util. Div., 281 F.3d 640 (7th Cir.2002). According to Stone, the plaintiff may establish a prima facie case of retaliation and overcome defendant's motion for summary judgment using either the direct method or the indirect method. Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. Id. at 644.

Under the indirect method, no causal connection is required between the protected activity and the adverse actions. To proceed this way, the plaintiff must show that (1) he engaged

in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse action from the employer; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Id.; Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002); Haywood v. Lucent Techs., 323 F.3d 524, 531 (7th Cir. 2003). If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for its adverse action. Id. Although the burden of production shifts to the defendant under this method, "the burden of persuasion rests at all times on the plaintiff." Haywood, 323 F.3d at 531 (citing Klein v. Trustees of Indiana Univ., 766 F.2d 275, 280 (7th Cir.1985)). Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. Id.

Plaintiff believes that he can satisfy the burden of proof under both the direct and indirect method of proof. He can satisfy neither. His claims of retaliation fail for the same reason under both the direct and indirect methods of proof: he cannot show that Defendants took a materially adverse employment action against him.

Defendant denies that Plaintiff has suffered any adverse employment actions. Plaintiff points to three things which he characterizes as adverse employment actions: (1) his assignment to the order picking task in the warehouse; (2) the denial of his application to become lead person; and (3) discipline he received for poor work performance, attendance, and bringing a notebook into the warehouse .

"[A] change in job responsibilities can ... constitute the type of adverse action by an employer that would support a retaliation claim[,] ... depend[ing] on how much of a change, and

7

how disadvantageous a change, took place." Sitar v. Indiana Dep't of Transportation, 344 F.3d 720, 727 (7th Cir. 2003). For Plaintiff, though, his job responsibilities have not changed. Order picking was always part of the job description for workers in Plaintiff's position. His day-to-day duties may have changed when he was moved from the auditor task to the order picking task, but his job responsibilities remained the same. When a given job encompasses a range of duties, being ordered to perform any of those duties will rarely, if ever, be a sufficient change in job responsibilities to constitute an adverse employment action.[2] See Place v. Abbot Lab, Inc., 215 F.3d 803, 810 (7th Cir. 2000) ("[B]eing shifted to an essentially equivalent job that [the plaintiff] did not happen to like as much does not a Title VII claim create.")

With respect to the lead person position, Plaintiff cannot establish that the failure to place him into this position constitutes an adverse employment action. In order to be an adverse employment action, "an employee must show that 'material harm has resulted from . . .the challenged actions.'" Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (quoting Haugerud v. Amery Sch. Dist. 259 F.3d 678, 692 (7th Cir. 2001). In this case, the Plaintiff has failed to demonstrate that the lead person receives any tangible benefits from occupying the role. The record demonstrates that when Plaintiff was the lead person in 1995, he did receive five cents more per hour as compensation. If this pay differential had continued to the present, Plaintiff's allegations relating to the lead person position would have some traction. Unfortunately for Plaintiff, the Defendant has submitted clear evidence that the pay differential no longer exists.

---

[2]Even if it were an adverse employment action, Plaintiff could not proceed on this basis under the direct method of proof because there is no causal connection between the assignment to order picker and any protected activity. Plaintiff became order picker in October 2000, prior to his complaint of racial discrimination. (Pl. Dep. at 155)

Plaintiff's own employment records indicate that he lost the additional five cents per hour not because of being displaced from the lead person position, but from a "new union contract." (Pl. App., Tab A-1)

In Traylor v. Brown, the Seventh Circuit addressed whether the failure to assign a plaintiff certain duties constituted an adverse employment action. There, the Seventh Circuit held that this was not an adverse employment action because the plaintiff "was not terminated, demoted, or disciplined[;] . . . her pay was unaffected and her job responsibilities were not materially diminished." Traylor, 295 F.3d at 789. Similarly, the Plaintiff in this case suffered no tangible, material harm from not being granted the lead person position. Therefore, the failure to so assign cannot be an adverse employment action within the meaning of the statute.

Plaintiff's final alleged adverse employment actions were discipline for poor work performance, poor attendance, and bringing a notebook into the warehouse. "Unfavorable performance evaluations alone d[o] not constitute adverse employment actions." Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 613 (7th Cir. 2001). Although Plaintiff received repeated warnings, none of these negative evaluations rise to the level of an adverse employment action that would be actionable under Title VII for they were not materially adverse.[3]

As Plaintiff did not suffer any materially adverse employment actions, he cannot sustain his claim of retaliation. Plaintiff still works for Defendant in the same position at the same pay.

---

[3]The only adverse employment action Plaintiff suffered that would be actionable under the statute is the three-day suspension for misappropriating corporate funds. Defendant suspended Plaintiff because he submitted a reimbursement request for safety shoes based on a receipt that was for tennis shoes. Defendant ordered Plaintiff to supply him with documentation that he had purchased new safety shoes, and when he failed to comply, he was suspended for three days. Unsurprisingly, Plaintiff does not press this action to support his claim for retaliation.

The Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

For the reasons given in this opinion, Defendants' Motion for Summary Judgment is granted in its entirety.

**Enter:**

*/s/ David H. Coar*

David H. Coar
United States District Judge

**Dated: October 21, 2003**